# In the United States Court of Federal Claims

No. 21-1737
Filed: June 28, 2023
NOT FOR PUBLICATION

---

**TIMOTHY JAMES ANTRIM,**

        *Plaintiff*,

v.

**UNITED STATES,**

        *Defendant*.

---

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

    In this military-pay case, the plaintiff, Timothy J. Antrim, seeks review of a decision of the Air Force Board for Correction of Military Records ("AFBCMR" or "the Board"). While enlisted in the Air National Guard ("ANG"), the plaintiff was diagnosed with Degenerative Disc Disease ("DDD"). After being discharged from the ANG, the plaintiff applied to the AFBCMR for a determination that this medical condition was incurred or exacerbated in the line of duty. The Board found that the plaintiff's condition existed prior to his entry into military service. The plaintiff then filed this suit. Following a voluntary remand for reconsideration of the plaintiff's claim, the AFBCMR again denied the plaintiff's application. The defendant now moves for judgment on the administrative record.

    The defendant's motion for judgment on the administrative record is granted. The AFBCMR's finding that there was no causal link between the plaintiff's condition and his military service was reasonable. The AFBCMR's determination that the plaintiff's condition was not incurred in the line of duty is consistent with the law and the record and, under the applicable standard of review, must be sustained.

## I.    BACKGROUND

    The plaintiff served on active duty in the Air Force from April 24, 1984, to February 27, 1986. (AR 101.) He also served in the Army National Guard from November 24, 1997, to March 25, 2003. (AR 102, 111.) The plaintiff enlisted in the ANG on July 24, 2012; he was discharged on July 23, 2018. (AR 235.) During his ANG service, the plaintiff only served on active duty for four brief periods: from May 19, 2013, to June 28, 2013; from May 26, 2014, to June 21, 2014; from September 12, 2016, to September 19, 2016; and from June 26, 2017, to June 30, 2017. (AR 236-37.) The plaintiff had no documented issues with his back prior to his

enlistment. In 2012, he received a full enlistment physical and an orthopedic examination, and no back problems were reported. (AR 301.)

On February 12, 2013, the plaintiff reported to his civilian doctor that he was experiencing left-knee pain and obtained a written medical excuse for his annual military Fitness Assessment ("FA"). (AR 220.) The plaintiff alleges that, on February 28, 2013, he was ordered by his supervisor to take his FA despite having the medical excuse from his civilian doctor; the plaintiff passed the FA. (AR 222, 224.)

In April 2013, the plaintiff was given a magnetic resonance imaging ("MRI") scan by a civilian provider and was diagnosed with a herniated disc. (AR 325.) In the plaintiff's periodic health assessment in 2014, military medical personnel noted that the plaintiff had "a recent history of vertebral disc disease," and that the plaintiff should be restricted regarding sit-ups. (AR 221.) No other restrictions were required, however, and the plaintiff was deemed fit to perform his job without limitations. (*Id.*) The plaintiff's periodic health assessment in 2015 was normal. (*Id.*)

In 2016, another MRI scan revealed a small disc bulge on the plaintiff's spine. (AR 221-22.) Both the plaintiff's civilian orthopedist and civilian chiropractor noted the plaintiff's back pain recurring around the same time every year—namely, around the time the plaintiff was training for the FA. (AR 222-23.) His civilian doctors diagnosed him in June and July of 2016 with a herniated disc, sciatica, and DDD. (*Id.*) The plaintiff reported to Flight Medicine with back pain in September 2016 and was restricted from running or performing sit-ups. (AR 223.)

The plaintiff experienced incapacitation attributable to his back condition each year from 2013 to 2016 for periods of seven to nine weeks. (AR 325-26.) He was able to recover from these incapacitation episodes every time with the help of his civilian doctors. (*Id.*) The plaintiff's condition was shown to improve significantly in a military clinical examination in 2017. (AR 224.) He was able to participate in "150 minutes of moderate intensity exercise per week and muscle strengthening activities 2 or more days per week," and all restrictions were lifted. (*Id.*)

Following his discharge from the ANG, the plaintiff promptly applied to the AFBCMR for an In Line of Duty ("ILOD") determination for his DDD on December 15, 2017. (AR 4, 12.) The National Guard Bureau ("NGB") recommended denying the claim. (AR 43-44.) The Board reviewed the records and denied the plaintiff's claim in October 2018. (AR 4.) The plaintiff resubmitted an application on August 28, 2020, and the Board again rejected the claim in July 2021. (AR 275.)

The plaintiff then filed this action in August 2021 seeking review of the denial. In January 2022, following briefing on the defendant's motion for judgment on the administrative record, the case was remanded by consent to the Board to reconsider the plaintiff's claim.

After remand to the Board, the NGB provided a new advisory opinion on June 3, 2022. The Board reconsidered and again rejected the plaintiff's claim on July 18, 2022. (AR 240-41.) In August 2022, the plaintiff submitted new evidence to the Board and again sought

reconsideration.  (AR 184, 214-15.)  The Board then requested a medical advisory opinion, which was provided on November 3, 2022.  (AR 219-30.)  The Board's medical advisor determined that although the plaintiff suffered from DDD, the plaintiff's back pain was connected to natural aging processes rather than to his ANG service.  (*Id.*)  The AFBCMR reconsidered and again rejected the plaintiff's claim on March 29, 2023.  (AR 192-93.)

On May 15, 2023, the defendant filed a renewed motion for judgment on the administrative record.  The plaintiff filed a response brief on May 24, 2023.  The defendant filed a reply brief on June 12, 2023.  Oral argument was held telephonically on June 20, 2023.

## II.     JURISDICTION AND STANDARD OF REVIEW

The Tucker Act, 28 U.S.C. § 1491(a)(1), authorizes the Court of Federal Claims to exercise jurisdiction over claims against the United States based on money-mandating statutes and regulations.  *Metz v. United States*, 466 F.3d 991, 995-98 (Fed. Cir. 2006).  The statute governing military retirement for disability, 10 U.S.C. § 1201, is a money-mandating statute.  *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005).

As the plaintiff seeks medical retirement for disability pursuant to 10 U.S.C. § 1201, his claim falls within the court's jurisdiction.

The defendant has moved for judgment on the administrative record under RCFC 52.1.  In consideration of such motions, the court's review is limited to the administrative record, and the court makes findings of fact as if it were conducting a trial on a paper record.[1]  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005); *see also Young v. United States*, 497 F. App'x 53, 58-59 (Fed. Cir. 2012) (*per curiam*) (applying the standard of review articulated in *Bannum* to a motion for judgment on the administrative record involving review of a decision of the AFBCMR), *cert. denied*, 569 U.S. 964 (2013).  The court must determine whether a party has met its burden of proof based on the evidence contained within the administrative record.  *Bannum*, 404 F.3d at 1355.  Genuine issues of material fact will not foreclose judgment on the administrative record.  *Id.* at 1356.

---

[1] The plaintiff has submitted new documents along with his response.  (Pl. Resp. at 10-15.)  On a motion for judgment on the administrative record, however, a court must confine its review to the administrative record, and "the parties' ability to supplement the administrative record is limited."  *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009).  The case was remanded in January 2022 specifically to allow the plaintiff the opportunity to present additional evidence and documents in support of his claim to the Board, and he provided additional materials to the Board for its consideration.  The plaintiff has not moved to supplement the administrative record to add the new documents or to remand to the Board to allow him to present the new document to the Board in the first instance.  The additional documents submitted by the plaintiff will not be considered.

A court must uphold a "decision of [a military correction board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010).  The court may not substitute its judgment for that of the military departments, even if "reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983).  Although the scope of review is narrow, in resolving a claim of error by a military correction board, a court must determine "'whether the agency examined the relevant data and articulated a satisfactory explanation for its decision, including a rational connection between the facts found and the choice made.'" *Sharpe v. United States*, 935 F.3d 1352, 1358 (Fed. Cir. 2019) (cleaned up) (quoting *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2569 (2019)).

### III. GOVERNING REGULATION

Air Force Instruction ("AFI") 36-2910 provides the legal standards for determining whether an injury was incurred in the line of duty for all Regular Air Force ("RegAF") members and members of the Air Reserve Command ("ARC"), which is composed of the Air Force Reserve ("AFR") and the ANG.  (AR 268.)

Under AFI 36-2910, "a determination of ILOD is made when the [service member's] illness, injury, disease or death was not due to the member's misconduct and was incurred when the member was present for duty or absent with authority or when the illness, injury or disease was service aggravated."  (AR 269.)  "A condition is aggravated by military service when there is a permanent worsening of a pre-service medical condition, over and above natural progression, caused by trauma or the nature of military service."  (*Id.*)  Natural progression is defined as "the course an illness, injury, or disease would take over time, regardless of military service."  (*Id.*)  The standard of proof for an ILOD determination is a preponderance of evidence.  (*Id.*)

A determination of Not in Line of Duty ("NILOD") can be made "when an investigation determined . . . the member's illness, injury, disease or the underlying condition causing it, existed prior to the member's entry into military service . . . or between periods of such service, and was not service aggravated."  (AR 270.)

For RegAF and ARC members who are ordered to active duty for more than 30 days and whose injury or aggravation happens during the period of active duty, the standard of proof for a NILOD determination is clear and unmistakable evidence.  (*Id.*)  For ARC members who are "ordered to active duty of less than 30 days" and whose injury or aggravation happens during this period of active service, AFI 36-2910 requires that the Air Force demonstrate by a preponderance of the evidence that the illness or injury was not incurred or aggravated ILOD to sustain a NILOD determination.  (*Id.*)

The plaintiff was a member of the ANG.  With one exception, none of the plaintiff's periods of active service exceeded 30 days.  The only period of the plaintiff's service that exceeded 30 days was his attendance at the Air Force Command and Control Battle Manager Apprentice course from May 19, 2013, to June 28, 2013.  The record reflects no traumatic or aggravating event occurring during that stint (AR 221), and the plaintiff makes no allegation of

4

injury during this stint. Under the AFI, the relevant standard of proof applicable to the plaintiff's claim is preponderance of the evidence.

## IV. DISCUSSION

The issue raised by the plaintiff's claim is whether the plaintiff's DDD occurred ILOD, *i.e.*, was caused or permanently aggravated by his service during his enlistment period. The plaintiff argues that the AFBCMR's decision is arbitrary and capricious because the record shows that his condition was caused by the FA he took in 2013. The plaintiff claims that he had no pre-existing back condition before his ANG service or the 2013 FA.

The defendant argues that there is insufficient evidence to establish that the plaintiff's condition was caused by the service, that his injury and diagnosis did not happen during a period of active service, and that the AFBCMR's decision was reasonable.

Two issues are presented for resolution: (1) whether the AFBCMR's decision finding no causal link between the plaintiff's DDD and his ANG service was arbitrary and capricious; and (2) whether the AFBCMR properly determined that the plaintiff's DDD was NILOD but rather existed prior to service.

### A. Causal Link

The plaintiff argues that his injury was caused or aggravated by his annual FAs, starting in 2013. He supports this argument using his medical records from his civilian chiropractor, Dr. Mark W. Vandine. (AR 30-31.) According to these records, the plaintiff was incapacitated for 7-9 weeks every year from 2013 to 2016. (*Id.*) All these periods of incapacitation followed the completion of the plaintiff's annual FA. (*Id.*) Dr. Vandine inferred that the running and sit-up portions of the FA caused or aggravated the plaintiff's back problem, leading to the annual periods of incapacitation. (AR 31.)

The plaintiff emphasizes one 2013 incident that, he argues, either triggered or aggravated his back condition. (*See* AR 195.) He experienced symptoms of sciatica and associated pain several weeks before his 2013 FA and obtained a note from a civilian doctor to excuse him from having to take his annual FA. (AR 220.) Despite the medical excuse, the plaintiff asserts that his ANG supervisor ordered him to take the FA, and the plaintiff did. (AR 195-96.) Shortly after taking the FA, in late April of 2013, the plaintiff underwent an MRI. The results of the MRI disclosed that the plaintiff had "[herniated nucleus pulposus] at L5-S1 and associated disc issues."[2] (AR 325.) The plaintiff contends that his back condition was caused by or, at least,

---

[2] A herniated nucleus pulposus, shortened to HNP, is "a condition in which part or all of the soft, gelatinous central portion of an intervertebral disk is forced through a weakened part of the disk, resulting in back pain and nerve root irritation." C. Benjamin Ma, *Herniated nucleus pulposus*, A.D.A.M. MEDICAL ENCYCLOPEDIA (Sept. 20, 2020), https://perma.cc/LVU8-3K2B (last visited June 19, 2023).

aggravated when he was required by his supervisor to take his 2013 FA despite having a medical excuse from his civilian doctor to be exempted from taking the FA.  (AR 199.)

The plaintiff argues that the medical advisory opinion is based on hypothesis and conjecture from generalized scientific studies rather than the plaintiff's own medical condition.

The AFBCMR medical advisor agreed with Dr. Vandine that the plaintiff's "symptom on-set was followed by intervening periods of symptom resolution or abatement, only to return at or about the same time each year in preparation for and performing his FA."  (AR 186.)  The plaintiff was periodically exempted from certain FA components.  (*Id*.)  The medical advisor also found it "inappropriate" that the plaintiff was ordered to complete his FA in 2013 despite the note.  (AR 226.)

Even so, after reviewing the plaintiff's service record and medical history, along with the plaintiff's newly submitted evidence on remand, the Board's medical advisor concluded that there was insufficient evidence supporting the plaintiff's claim that the FA caused or aggravated his conditions.  (AR 225-26.)  Instead, the Board's medical advisor opined that the plaintiff's symptoms were not representative of "any permanent worsening of the natural progression of the existing degenerative process."  (AR 226.)  The medical advisor considered the plaintiff's MRI scans and medical history along with relevant medical studies.[3]  The medical advisor noted that the plaintiff was able to recover from his incapacitation episodes every year and his condition improved significantly in 2017.  (AR 225.)  He therefore concluded that the plaintiff's condition was "the result of the natural physiologic progression of the aging process and [was] not caused by or permanently aggravated by performance of or preparation of his annual Fitness Assessment."  (AR 226.)

The plaintiff did not seek to rebut the medical advisory opinion with competent medical evidence, offering instead only his own opinion.  (AR 232-34.)  Relying primarily on the opinion of its medical advisor, the Board found that the evidence did not substantiate the plaintiff's claim and determined that "there was insufficient evidence of an error or injustice" to warrant correction of the plaintiff's records.  (AR 182.)

The plaintiff's argument criticizing the generality of the medical advisory opinion is undercut by the medical advisor's specific consideration of the plaintiff's MRI scans and the plaintiff's medical records, including those produced by civilian health providers.  (AR 221.)  The medical advisor's consideration of broader scientific studies in addition to the plaintiff's personal records was thus appropriate.

---

[3] The Board's medical advisor cited two studies to support his conclusion.  The first was by Raj M. Amin, et. al. *Lumbar Disc Herniation*, Current Reviews in Musculoskeletal Medicine, (2017).  The second was described by the medical advisor as "a study, conducted in 2014, by the *LDH [lumbar disc herniation] with Radiculopathy Work Group of the North American Spine Society's (NASS) Evidence-Based Guideline Development Committee*."  (AR 225.)

The dispute at the heart of the case is whether the Board's interpretation of the evidence was reasonable or arbitrary and capricious. The plaintiff had offered the Board notes from his own medical provider suggesting a possible connection between the plaintiff's condition and the FA. The medical advisory opinion nonetheless determined that the plaintiff's DDD and herniated disc were the result of age. The evidence could have supported a conclusion for or against the plaintiff. The Board opted, however, to endorse the unrebutted opinion of its own medical advisor. Even when reasonable minds could disagree, a court cannot substitute its position for that of an agency. *See Heisig*, 719 F.2d at 1156.

The plaintiff does not point to evidence in the record that the Board overlooked or failed to address. In oral argument, the plaintiff explained that after the medical advisor issued his opinion, the plaintiff did not present any additional competent medical evidence to rebut the advisor's findings. The plaintiff offers only his own disagreement, as a layperson, to contradict the Board's conclusion, which was based on substantial medical evidence.

Reasonable minds may disagree with the Board's conclusion, but courts must defer to the military department's decision when it is based on the relevant evidence, does not overlook or neglect to address contrary evidence, and articulates a satisfactory explanation for its decision. *See Heisig*, 719 F.2d at 1156; *Sharpe*, 935 F.3d at 1358. The AFBCMR considered the evidence submitted by the plaintiff and the opinion of its medical advisor and articulated a satisfactory explanation for its decision to attribute the plaintiff's DDD to natural aging. *See Sharpe*, 935 F.3d at 1358. The Court is bound by a deferential standard of review, under which the Board's decision must be upheld "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick*, 591 F.3d at 1377. Accordingly, the AFBCMR's finding of no causal link between the plaintiff's injury and his service must be upheld.

### B. Existed Prior to Service

As a corollary to its finding that the plaintiff's injury was caused by aging and not by his ANG service, the AFBCMR found that the plaintiff's condition had existed prior to his service. The plaintiff disputes this conclusion. Based on the absence of any noted back condition from his 2012 pre-enlistment physical, the plaintiff argues that his condition could only have arisen after his enlistment, as there is otherwise no evidence to support the Board's conclusion that the condition existed prior to service. He further contends that by determining his condition existed prior to service without sufficient evidence, the Board's decision was arbitrary and capricious. (Pl.'s Resp. at 2-3.) In his response to the defendant's motion, the plaintiff concedes that the medical advisory opinion provided a rationale for the Board to find that the condition existed prior to service but contends that that conclusion "is based on hypothesis and conjecture" inadequate to support the Board's determination. (*Id.* at 2.)

The Board's medical advisor explained that a determination that a condition existed prior to service "applies to an illness or injury that occurred prior to any affiliation with military service, *or* presented *after* entering military service, but was *not* the proximate result of [caused by or permanently aggravated by] performance of duty, during a period of 30 days or less, or occurred when not in a duty status at occurrence." (AR 224) (emphasis and brackets in original.)

The medical advisor apparently accepted the plaintiff's argument that when the plaintiff enlisted, he had no back problems. (AR 226.) After thoroughly reviewing the plaintiff's records and consulting relevant medical studies, the medical advisor opined that there was no evidence that the plaintiff's performance of his duties proximately caused the plaintiff's condition. (*Id.*) Additionally, the plaintiff's symptoms were "episodic," and thus not permanently aggravated by his service. (AR 225.) Although the plaintiff experienced "flare-ups" of back pain, the plaintiff recovered every year. (AR 225-26.) Because the plaintiff was not on active duty for long periods of time when he experienced flare-ups of back pain, the Board only needed to find preponderant evidence indicating that the plaintiff's back problems were not caused by or permanently aggravated by his military service.

The medical advisor and Board properly applied AFI 36-2910 to determine that the plaintiff's injury existed prior to service and was not incurred in the line of duty. The unrebutted medical advisory opinion is rational and considers the relevant legal standards for an ILOD determination. The plaintiff's contrary opinion, not reflected in any medical evidence postdating the medical advisory opinion, is insufficient to overcome the reasonableness of the Board's decision.

A court reviews only whether the agency examined the relevant evidence and articulated a satisfactory explanation for its decision. *See Sharpe*, 935 F.3d at 1358. Here, without competent medical evidence to contradict the hypothesis of the Board's medical advisor, it was reasonable for the AFBCMR to conclude that the plaintiff's condition existed prior to service. The plaintiff simply disagrees with this conclusion, but mere disagreement is insufficient to warrant a reversal of the conclusion. The medical advisory opinion (AR 219-30) and the Board considered the plaintiff's evidence in support of his claim. (AR 183-93.) Having considered the relevant evidence, the AFBCMR's conclusion is reasonable and may not be disturbed.

## V.    CONCLUSION

Applying AFI 36-2910, the AFBCMR found that the plaintiff's DDD existed prior to the plaintiff's service and was not incurred or aggravated in the line of duty. The AFBCMR's decision is supported by the record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.[4]

---

[4] In his opposition to the defendant's motion for judgment on the administrative record the plaintiff asserts that the order from his supervisor to take the 2013 FA notwithstanding his medical excuse constituted bad faith. (Pl. Resp. at 5.) That argument is not relevant to the question of whether the Board erred in its conclusion that the plaintiff's DDD was not caused or aggravated in service and that the underlying cause of the injury existed prior to service. Accordingly, the argument need not be addressed.

Accordingly, the defendant's motion for judgment on the administrative record is **GRANTED**.  The case is **DISMISSED**, and the Clerk is **DIRECTED** to enter judgment for the defendant.  No costs are awarded.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**